EXHIBIT

A

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISON

| | | |
|---|---|---|
| **BRANDON WALKER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **FILED** |
| **TARRANT COUNTY,** | § | |
| **MICHAEL FORD, KEITHA** | § | **July 8, 2024** |
| **HALLENBECK, FLOYD** | § | KAREN MITCHELL |
| **HECKMAN, CHARLES** | § | CLERK, U.S. DISTRICT |
| **ECKERT, MILTON KUSER,** | § | COURT |
| **TIMOTHY CANAS, STEVEN** | § | |
| **SPARKS, MIKE SIMONDS, and** | § | |
| **TARRANT COUNTY SHERIFF** | § | |
| **BILL E. WAYBOURN** | § | |
| | § | |
| **Defendants.** | § | |

**CIVIL ACTION NO.**

**4:24-CV-00245-O-BP**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S SECOND AMENDED SUPPLEMENTAL COMPLAINT and REQUEST

## FOR REINSTATEMENT

Comes now Plaintiff, Brandon Walker, response to Tarrant County Sheriff's Office and Tarrant County Sheriff Bill E. Waybourn, Defendant's, motion in accordance with FRCP Rule 12 (b) for the actions of mistreatment following Plaintiff's complaint. This supplemental answer will relate to Plaintiff's previous amendment with exhibits and documents, LR 15(a)(1)(b). Defendant(s) and Tarrant County management conspired to permanently injure Plaintiff's career by intentionally violating Tarrant County policies, Texas State laws, Federal laws and the United States Constitution. Plaintiff now files his Second Amended Complaint to the Defendant's actions. Plaintiff added two defendants who are not indispensable but are contributors to actions taken against Plaintiff, Steven Sparks and Mike Simonds. Plaintiff request summons to be granted for said defendants and Plaintiff further request addition time to properly serve the two parties.

1

Plaintiff BRANDON WALKER ("Plaintiff"), by Pro Se, bring this action for damages and other legal and equitable relief from Defendants TARRANT COUNTY, MICHAEL FORD, KEITHA HALLENBECK, FLOYD HECKMAN, CHARLES ECKERT, MILTON KUSER, TIMOTHY CANAS, STEVEN SPARKS, MIKE SIMONDS and TARRANT COUNTY SHERIFF BILL E. WAYBOURN ("Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, Federal Constitution, 42 U.S.C. §§ 1983 et seq., the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("TLC"), Texas Whistleblower Act Tex. Gov't Code § 554.002(a), and any other causes of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.    Plaintiff bring his second amended complaint to obtain relief. This is an action brought by Plaintiff seeking damages from Defendant(s) for acts of unlawful discrimination, harassment, retaliation, and wrongful termination. Defendant's acts of retaliation are in violation of Title VII of the Civil Rights Act of 1964, the entitled U. S. Constitutional Rights of the Federal Constitution, the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("TLC"), Texas Whistleblower Act Tex. Gov't Code § 554.002(a), and any other cause(s) of action that can be inferred from the facts set forth herein.

## THE PURPOSE OF THE LAW

2.    The federal anti-discrimination laws' primary objectives are preventative, aimed not to provide redress but to avoid harm.

3.    Employers may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

2

4.    The right to expect that employers hire HR representatives qualified to follow discrimination and retaliation laws is essential to our community.

5.    The right to expect that employers will adequately train managers to follow discrimination and retaliation law is essential to our community.

6.    The right to expect that employers will supervise managers to follow discrimination and retaliation law is essential to our community.

7.    The right to expect that employers will prevent any form of discrimination or retaliate against persons who report discrimination is essential to our community.

8.    The right to expect that employers must care about workplace laws to protect us from damage is essential to our community.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights and (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq*., as amended.

10.    The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal, Texas Whistleblower Act Tex. Gov't Code § 554.002(a), claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

11.    Plaintiffs' claims for declaratory and injunctive relief are brought pursuant to Federal Rule of Civil Procedure 65, and the general legal and equitable powers of this Court

3

12.     Venue is proper in this Court as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business and resides in this district.

**PARTIES**

13.     Plaintiff, Brandon Walker, is a person who has been aggrieved by Defendant's actions. He is and has been a resident of Tarrant County, Texas and was an employee Tarrant County Sheriff's Office, Tarrant County, Texas since May 15th, 2011.

14.     At all relevant times, Plaintiff was an employee of Defendant, Tarrant County, and therefore covered by Title VII and the Federal Constitution.

15.     Defendant, Tarrant County (Tarrant County Sheriff's Office) is located within the State of Texas and within the Northern District of Texas. Defendant, Tarrant County employs over five hundred (500) employees.

16.     Defendant, Michael Ford, is and/or was an employee of Tarrant County and was assigned as a Lieutenant in rank during the duration of the matters at issue herein.

17.     Defendant, Keitha Hallenbeck, is and/or was an employee of Tarrant County and was assigned as a Lieutenant in rank during the duration of the matters at issue herein.

18.     Defendant, Floyd Heckman, is and/or was an employee of Tarrant County and was assigned as a Lieutenant in rank, then promoted to a Captain position during the duration of the matters at issue herein.

19.     Defendant, Charles Eckert, is and/or was an employee of Tarrant County and was assigned as a Chief Deputy in rank during the duration of the matters at issue herein.

20.     Defendant, Milton Kuser, is and/or was an employee of Tarrant County and was assigned as a Lieutenant in rank during the duration of the matters at issue herein.

21.     Defendant, Timothy Canas, is and/or was an employee of Tarrant County and was assigned as a Lieutenant in rank during the duration of the matters at issue herein.

22.     Defendant, Steven Sparks, is and/or was an employee of Tarrant County and was assigned as a Chief Deputy in rank during the duration of the matters at issue herein.

23.     Defendant, Mike Simonds, is and/or was an employee of Tarrant County and was assigned as a Senior Chief Deputy in rank during the duration of the matters at issue herein.


24.     Defendant, Tarrant County Sheriff Bill E. Waybourn, is a resident of Tarrant County who was an elected official, who had the powers and duties prescribed by Article 5, Section 23 of the Texas Constitution and was the Plaintiff's primary administrator for the duration of the matters at issue herein.

25.     During all relevant times, Defendant(s) has been an employer, and/or an employee covered by Title VII and the U. S. Federal Constitution.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

26.     Plaintiff, who has herein alleged claims pursuant to Title VII, and the U. S. Federal Constitution has timely filed his Charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Department of Justice (DOJ).

27.     On December 18th, 2023, Plaintiff received his Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC) and the Department of Justice DOJ. Plaintiff filed his complaint on March 15th, 2024, which is within the statute of limitations.

## STATEMENT OF THE FACTS

28.    At all relevant times, Plaintiff was a Sheriff's Deputy employed by Defendant, Tarrant County, to work in the Tarrant County Sheriff's Office.

29.    The Plaintiff filed a charge with the EEOC, in or around August 15, 2018, related to complaining about his experiences of race discrimination and retaliation during his employment with Defendant. Plaintiff was provided a negative evaluation after being transferred to a position of lesser desire after making a complaint. On October 15th, 2018, Plaintiff spoke with the Tarrant County Assistant Administrator Jay Singleton about the alleged discrimination, harassment and retaliation Plaintiff experienced due to reporting unlawful, unethical, and illegal acts committed by person(s) in higher command while being assigned to CNET, a narcotics unit, between the years of 2015-2017. The Tarrant County Assistant Administrator, Jay Singleton, advised there were several alleged criminal activities within the Plaintiff's complaint that was "beyond his scope of investigations". The Tarrant County Assistant Administrator stated he will notify Bill E. Waybourn, and the Tarrant County Sheriff's Office will investigate the alleged criminal activity.

30.    Plaintiff had never received a verbal warning, written warning, or any disciplinary action in his career until he complained about discrimination, illegal acts, constitutional violations, and retaliation. The aforementioned conduct are violations that are defined in chapter 12 of the Tarrant County Civil Service Rules. (see TC and TCSO policy exhibit 1). The U. S. Constitution Amendments can be referred to through www.whitehouse.gov. Illegal or unlawful acts are defined in the Texas Penal Code. (See link https://statutes.capitol.texas.gov/Docs/PE/htm/PE.1.htm)

31.    During this timeframe, Plaintiff was denied worked overtime, was subjected to being called racial names (nigga) in the presence of command staff by peer(s) and/or coworker(s) on a daily weekly and or yearly basis; worked in a hostile working environment, was denied training for advancement opportunities; was treated differently than other coworkers due to race

6

and was retaliated upon when reporting these actions to command staff. In the same period, Plaintiff had to endure similar treatment from his direct supervisor(s) as he was referred to as a Mental Health Mentally Retard (MHMR) person, was mocked due to the way Plaintiff spoke as an African-American, be a witness to racial statements towards African-American suspects, was ordered to conduct an unlawful search of a cellular device, (Fourth Amendment violation), be a witness to Lieutenant Heckman who used Tarrant County Sheriff's Office resources, TX Penal Code 39.02 (Abuse of Official Capacity), to investigate his spouse. Lieutenant Heckman allegedly attended online university classes while on duty to later teach courses online as an adjunct professor while on duty TX Penal Code 39.02 (Abuse of Official Capacity) and witness the mishandling of co-operating confidential (informants) source(s) which placed their lives in harm way.

On or about November 2nd, 2017, the Plaintiff was transferred from his position and later provided a negative appraisal even though the Plaintiff was nominated for Texas Narcotics Officer of the Year in the same year. Defendants violated Plaintiff's rights by transferring him out of the Narcotics Unit as a reaction to his complaint about Lt. Hallenbeck, how he was being treated differently in the unit with a racial underlining issue, not being paid time worked overtime and adding negative comments to his personnel file.

32.     This adverse action of the negative appraisal was a desperate attempt to justify the transfer. On November 5th, 2017, the Plaintiff met with the Tarrant County Sheriff, Bill E. Waybourn and the Executive Deputy Mike Simonds. Plaintiff was informed they must believe what their Lieutenants have stated. Sheriff Bill Waybourn asked if Plaintiff would like to go back to the narcotics unit, but Plaintiff declined to return to the unit as Plaintiff was going to submit a formal complaint.

33.    On or about November 11th, 2017, Plaintiff notified Defendant(s) through the Combined Law Enforcement Association of Texas (CLEAT) Union representative, Terry Boone, with a statement detailing the above experience. The Plaintiff was scheduled to be under the command of one of the Lieutenants, Lt. Don Harris, who is named in the complaint (see exhibit 2).

34.    On or about January 1, 2018, the Tarrant County Sheriff's Office responded by placing an African American Lieutenant as Plaintiff's supervisor. The Tarrant County Sheriff's Office did not act upon the Plaintiff's complaint through writing but responded with the personnel change. During Plaintiff's career in the operation division of the Tarrant County Sheriff's Office, there were no African American Lieutenant in the patrol operation division.  Plaintiff requested his performance appraisal several times from his previous supervisors. Plaintiff received his appraisal in April of 2018 even though his appraisal was due in December the previous year. The appraisal was subjectively negative, and it was a direct adverse action that resulted from Plaintiff's engagement of a protected activity, the written complaint (see Exhibit 3). Lt. Heckman and Lt. Hallenbeck violated Plaintiff's 1st Amendment Right with their action of his ability to report their adverse act without reprisal.

35.    On or about May 25th, 2018, Plaintiff disclosed to his Lieutenant the unlawful experience in the narcotics unit and his conversation with Bill E. Waybourn. The lieutenant responded, "Bill Waybourn and his administration are corrupt". The same lieutenant advised he had experienced recent racial discrimination within his career at the Tarrant County Sheriff's Office. Tarrant County and or Tarrant County Sheriff's Office failed to respond to Plaintiff's initial complaint in writing. On July 20th, 2018, Plaintiff submitted another formal complaint to the Tarrant County Human Resources according to the Tarrant County Sheriff's Office Civil Service

Rules (see TCSO civil service rule 7.120). Plaintiff did not receive any response or confirmation. Prior to the statute of limitations for an EEOC complaint to be filed, Plaintiff submitted his complaint timely (August 15th, 2018) as it appeared Tarrant County was intentionally stalling. During this period of a protected activity, Plaintiff was subjected to several covert operation(s). This was due to a conspiring management staff and the rumors they initiated about Plaintiff which further led to investigations against Plaintiff. This would include an operation at a local bar and multiple traffic stops conducted by Tarrant County Sheriff's deputies on Plaintiff near his home. The deputies who conducted the traffic stops were assigned to Lieutenant Harris. In or around 2016, Lt. Harris was removed from the narcotics unit due to Lt. Heckman requesting Plaintiff and another investigator to meet with Chief Deputy Timothy Canas to complain. Lt. Heckman wanted Lt. Hallenbeck to join the unit. Chief Deputy Canas was the commander of the narcotics unit. Lt. Heckman wanted Plaintiff and unnamed investigator to report Lt. Harris was being reckless on duty. Lt. Harris was removed due to that complaint and Lt. Hallenbeck replaced him. Lt. Harris was named in both of Plaintiff's complaint(s) to Tarrant County. Lt. Harris and Lt. Hallenbeck were friends and spoke often.

36.    The traffic stops on the Plaintiff were routine but later the traffic stops dash cam footage was destroyed and used against Plaintiff as part of a plot created by Lt. Hallenbeck as retaliation with the assistance of others within high command of the Tarrant County Sheriff's Office (Tx. Penal Code 36.06 Retaliation or Obstruction) (TC Civil Service Rules 12.02 (9)). Based upon some preparatory acts committed by Lt. Hallenbeck, Lt. Milton Kuser, Chief Deputy Timothy Canas, and others, this can be reasonably be defined as a crime under section 18 U. S. Code 371. (refer to Justice.gov). Their plot consisted of Lt. Kuser violating Plaintiff's 1st, 4th, 5th, 6th and 14th Constitutional Amendment Rights. It was later definitively learned that Lt. Kuser and

others were receiving a financial benefit from Lt. Hallenbeck during these times of investigations into her unlawful acts. Tarrant County and the Tarrant County Sheriff's Office were aware of this potential bribery (Texas Penal Code 36.02, TCSO Civil Service Rules 18.03). Deputy Jay Rotter advised Lt. Hallenbeck received a large sum of money from Tarrant County by suing the county for harassment. If this to be true, Tarrant County may have hesitated to properly investigate Plaintiff's complaint of the facts or had worked with Lt. Hallenbeck as a defense to liability.

37.    On October 22, 2018, Tarrant County, and Sheriff Bill E. Waybourn used race to undermine Plaintiff's complaint of a racial discrimination and retaliation claim and other aspects of the complaint by authorizing the same African American Lieutenant and Lt. Kuser to investigate the complaint. The Defendants weaponized the Internal Affairs Division of the Tarrant County Sheriff's Office against the Plaintiff as an adverse act. The Plaintiff provided numerous documents and a recording of what he believed was Deputy Jay Allen Rotter (his partner) consuming a potential controlled substance (THC) on duty.

38.    On or before November 01, 2018, Tarrant County Sheriff Bill E. Waybourn learned through Plaintiff's complaint that Plaintiff had disclosed he was in possession of covert recording of his supervisors. Sheriff Waybourn created a directive as a result (see exhibit 4). This directive was announced in Plaintiff's morning briefing by supervisors which was out of the ordinary, to intimidate or deter Plaintiff from continuing to protect himself which violated his 1st Amended Right according to the U. S. Constitution. Plaintiff has the right to record matters of public interest.

39.    On or about November 21st, 2018, Tarrant County and Tarrant County Sheriff's Office Bill E. Waybourn agreed to mediate with Plaintiff through the Fort Worth Human Relation.

10

The scheduled date was December 13th, 2018 (see exhibit 5). The agreement included rules parties had to follow.

40.    On or about November 30th, 2018, Plaintiff met with Lt. Kuser to answer defensive questions that were not related to a fact-finding conclusion to Plaintiff's complaint. Plaintiff believed the Tarrant County Sheriff's Office were attempting to entrap him into a criminal investigation based on suspicious activities he was experiencing. The Plaintiff did not trust Lt. Kuser as he was an associate of those named in the complaint, which was a conflict of interest. Lt. Kuser requested more tangible evidence from Plaintiff.

41.    On or about December 10th, 2018, Plaintiff provided supporting documentation and two recordings: one with Lt. Heckman and one with Deputy J. Rotter. The recording with Lt. Heckman demonstrated why Plaintiff could not trust the investigative process. The recording with Deputy J. Rotter, reveals him potentially consuming a known prohibited substance, Tetrahydrocannabinol (THC), to the Plaintiff while on duty (TX Penal Code 39.02 (Abuse of Official Capacity) (TCSO Civil Service Rules 12.02.10). THC and or THC products are considered a Schedule 1 controlled substance by the U. S. Drug Enforcement Agency (DEA) (see dea.gov). Deputy J. Rotter advised he used a substance that he was receiving from a former narcotics investigator who opened a CBD shop in a state where Marijuana and THC were legal.

42.    The retaliation portion of Plaintiff's complaint was never investigated by Tarrant County or the Tarrant County Sheriff's Office according to the investigator. It also confirms the head supervisors of each division were fully aware of Plaintiffs complaint and they provided directions to investigators (see exhibit 6).

43.    On or about December 12th, 2018, Plaintiff was ordered to meet with Lt. Kuser. Instead of adequately conducting a follow-up investigation, during what the Plaintiff believed to

be an interview in reference to the submitted recording(s), the Plaintiff became the subject of a criminal investigation due to their associate, Lt. Hallenbeck, false statements. Plaintiff requested his Miranda Rights and or Garity Warning to be read to him. Lt. Kuser advised Plaintiff did not have a right to an attorney and an attorney "cannot help you behind these walls" which violated Plaintiff's Sixth Amendment Right. Lieutenant Kuser intentionally violated the Plaintiff's Fourth and Fifth Amendment Rights by not providing the Garrity Warning which is provided to officers who are suspected of misconduct or criminal allegations by their agency (Garrity v. New Jersey). Lt. Kuser ordered the Plaintiff to answer his questions. The African American Lieutenant later joined the interview. Following this meeting and unbeknown to Plaintiff, he was suspended after this meeting even though he went back to patrol. This is evident according to Plaintiff's time sheet as Lt. Kuser used Plaintiff's sick time then added a half hour of suspended pay even though Plaintiff finished his shift on the county's time (see Exhibit 7).

44.    On December 13th, 2023, Plaintiff met with Tarrant County representatives and Sheriff Bill E Waybourn for mediation. There was no resolution agreed upon in the mediation. At the conclusion of the mediation, Plaintiff was then notified to report to Internal Affairs the following morning, December 14th, 2018, as he was "indefinitely suspended" pending the threat of an arrest for the traffic stops statement and or termination for dishonesty from an unlawful detention (see exhibit 8). The suspension notice was per Chief Deputy Tim Canas. Lt. Kuser's sworn statement admits Chief Deputy Canas knew on or around October of Plaintiff's complaint. Tarrant County and or Tarrant County Sheriff's Office Bill Waybourn, did not agree to the mediation meeting in good faith as they saw an opportunity to have Plaintiff sign a non-disclosure agreement, in reference to his complaints, and for him to not have the ability to mention the retaliation in the event of an arrest and/or termination of Plaintiff. Plaintiff had never been

suspended in his career until he made valid complaints of discrimination, unlawful acts, and retaliation. This unlawful detention and investigation were a direct result of Lt. Hallenbeck's email to the Tarrant County District Attorney's Office in furtherance of retaliation. The email was dated October 18, 2018, and it definitively states Plaintiff committed a crime without due process.

45.    One of the telling elements of retaliation in this case is timing. Tarrant County and the Tarrant County Sheriff's Office and its Sheriff's knew of this statement on or about October 18th, 2018. They, the department leaders, and officials, collectively planned and executed a flawed plan against Plaintiff. Fortunately, or unfortunately, they were caught with their hands in the cookie jar.

46.    Lieutenant Hallenbeck learned Plaintiff had filed a formal complaint of retaliation and she wanted to create a false narrative to place Plaintiff on the Brady's List. In the legal system of the United States, a ***Brady* disclosure** consists of exculpatory or impeaching information and evidence that is material to the guilt or innocence or to the punishment of a defendant. The term comes from the 1963 U.S. Supreme Court case *Brady v. Maryland*,[1] in which the Supreme Court ruled that suppression by the prosecution of evidence favorable to a defendant who has requested it violates due process (see Wikipedia). Lt. Hallenbeck concluded that Plaintiff had committed a crime in the official court disclosure (see exhibit 9), without due process which violated Plaintiff's Fourteenth Amendment. Based on Defendant's policies, the adverse employment action underwent a lengthy investigation process as Plaintiff was going through the promotion process. This premeditated retaliatory act was permeated with intimidation and discrimination which caused an overbearing amount of stress, mental anguish, and loss of financial advancement. The Tarrant County Sheriff's Office noticed their violation after Plaintiff amended his EEOC complaint

advising he was further retaliated upon as the investigation was fabricated. This action denied Plaintiff an advancement opportunity.

47.    On or about January 17, 2019, The Plaintiff met with Sheriff Bill E. Waybourn, Lt. Kuser and Steven Sparks the Chief of IAD, where Sheriff Bill E. Waybourn advised the investigation against the Plaintiff was "unfounded" (see exhibit 10). A false accusation is a claim or allegation of wrongdoing that is untrue and/or otherwise unsupported by facts.[1] False accusations are also known as groundless accusations or unfounded accusations or false allegations or false claims (see Wikipedia). The Plaintiff was reinstated and did not have the fair ability to promote. Tarrant County and or Tarrant County Sheriff's Office suspended the Chapter 6 policies due to Plaintiff seeking to promote. Under Federal Law a "victim" is an individual who suffers direct or threatened physical, financial, or emotional harm because of the commission or a crime. Section 18 U.S.C. § 241 makes it unlawful for two or more persons to agree to injure, threaten, or intimidate a person in the United States in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States or because of his or her having exercised such a right. According to Section 18 U.S.C. § 1594 (b) and (c) the penalty for conspiracy is punishable to the same extent as for the underlying violation itself. (see justice.gov). The Defendant(s) intentionally violated Plaintiffs clearly established, Fourth, Fifth, Sixth and Fourteenth Amendment Rights due to their orders. Plaintiff met with an FBI Agent at the Fort Worth, Texas FBI headquarters on June 24, 2019 and provided relevant information about these allegations. The agent made contact with Tarrant County through their District Attorney's Office. He was advised the Tarrant County District Attorney's Office was going to handle the inquiry.

48.    The Tarrant County Sheriff's Office determined a no probable cause finding into Plaintiff's complaint and never investigated the alleged criminal or unlawful acts that were stated

in the Plaintiff's complaint. The Plaintiff appealed the findings and on or about July 2019, Plaintiff provided the Tarrant County Human Resources a response and numerous amounts of text messages and other corroborating documents as requested.  Upon the hearing, in front of the Tarrant County Sheriff's Office Civil Service Commission, Plaintiff requested an independent investigation into the Tarrant County Sheriff's Office alleged illegal actions. The request was based upon the Tarrant County Assistant Administrator previous statement that the Tarrant County Civil Service Commission had the ability to open a full investigation into the Tarrant County Sheriff's Office. The Tarrant County Civil Service Chairman, Tim O'Hare, advised the Plaintiff's complaint was similar to disturbing but denied the independent investigation. The decision would further conceal the acts of the Tarrant County Sheriff's Office Lieutenants and other employee(s). The EEOC's investigation was still pending during this timeframe.

49.    Plaintiff was under the command of individuals who were not associated with named subjects of his formal complaint until March of 2020.  During the Covid-19 outbreak, the Tarrant County Judge made a ruling that affected the Tarrant County Sheriff's Office daily operations. The ruling caused a high-ranking member of the Tarrant County Sheriff's Office to order deputies to limit their activities and contact with the public. The Plaintiff was notified by his coworker that an indirect supervising Sergeant was starting rumors about removing Plaintiff from his position due to not writing citations during a highly contagious deadly disease outbreak, Covid-19. This Sergeant was an associate of those named in the Plaintiff's formal complaint. On or about March 27th, 2020, Plaintiff professionally went to said Sergeant and requested him to discontinue the actions the Plaintiff perceived as harassment per department policy (see TCSO Civil Service Rules 18.09). The Sergeant stood up and took his gun belt off and moved towards Plaintiff as if he wanted a physical altercation. Plaintiff did not accept the advance and left as he was off duty. The

following day, Plaintiff was summoned by his supervising Sergeant to come in early to meet with just him. Upon Plaintiff's arrival into the room, and unbeknownst to Plaintiff, the indirect Sergeant came in from behind Plaintiff, shoved the Plaintiff while ordering Plaintiff to sit down in a room with two unmasked people during the pandemic. The Plaintiff was highly offended and upset. The Sergeant advised he was authorized by Lieutenant Kuser and Chief Deputy Canas, who previously violated Plaintiff's Fourth Amendment Rights, to have a friendly conversation with Plaintiff even though Plaintiff was being held against his will to leave. Plaintiff requested his Miranda Rights and Garrity Warnings be read to him with no prevail. The Plaintiff was given a quota and released after approximately forty-five minutes.

50.    Plaintiff again wrote a formal complaint to the Tarrant County Human Resources which was met with a Tarrant County Sheriff's Office IAD investigation based upon the Sergeant detaining Plaintiff after said Sergeant assaulted Plaintiff. Tarrant County Sheriff's Office IAD issued the complaint to stop Plaintiff from sharing information to human resources or any other entity as it would be a violation of the Garrity Warning. Tarrant County Sheriff's Office created another ploy against Plaintiff with fabricated statements and actions. As Plaintiff was again going through the promotion process, on or about April 8th, 2020, Plaintiff was suspended pending the Tarrant County Sheriff's Office IAD investigation. On July 1st, 2020, Plaintiff was placed on Administrative Leave. On or about July 6th, 2020, Plaintiff was coerced into signing a disclosure and going through a fit for duty exam or be disciplined and or terminated. This adverse action denied Plaintiff the opportunity to promote.

51.    During the course of the EEOC's investigation, Plaintiff was subjected to the adverse employment action of a third level disciplinary action under Defendant's policies and procedures.

52.     Again, based on Defendant's policies, the adverse employment action underwent another lengthy investigation process, resulting in Plaintiff receiving a Final Decision Letter indicating that Defendant would be punishing Plaintiff with a three-day suspension without pay. Plaintiff sought to appeal the suspension. During negotiations of a potential EEOC settlement, Tarrant County, Tarrant County Sheriff's Office, and Sheriff Bill E. Waybourn used privileged/confidential information as material during the Tarrant County Civil Service appeal hearing process which affected the outcome.

53.     During this time, Plaintiff's EEOC charge was still open and undergoing investigation.

54.     At or around this time, in close temporal proximity to Defendant's notification of the Position Statement requirement, Plaintiff was subjected to the Defendant's final decision to subject him to a three-day suspension without pay.

55.     The institution of Plaintiff's suspension without pay was an adverse employment action in retaliation for Plaintiff's engaging in the activity of filing an EEOC Charge of Discrimination.

56.     On or about September 16th, 2020, Plaintiff was reinstated. In the process of the transfer, Plaintiff's personal property was discarded by the Sergeant and or Sergeants prior to Plaintiff's reassignment. This action again, was to get a reaction from the Plaintiff. There was no effort to locate Plaintiff's personal property which was never recovered. Based upon Plaintiff's prior experience with the Internal Affairs Division, Plaintiff elected to file a police report with the Fort Worth Police Department about his property.

57.     Plaintiff was scheduled to be assigned under Lieutenant Michael Ford whom Plaintiff had reported for alleged criminal activities that were not investigated and the use of

excessive force during a narcotics arrest. Lt. Ford also had other personal vendettas against Plaintiff. Plaintiff was also indirectly assigned under a person in higher command, Chief Deputy Charles Eckert who was demoted due to Plaintiff's reporting of TCOLE hours improperly being reported for a very large group of deputies which included the Plaintiff.

58.    Per Tarrant County Sheriff's Office Civil Service Rule 18.12 and as it related to Chapter 13 of the Civil Service Rule, Plaintiff reported the adverse reassignment according to Tarrant County and or Tarrant County Sheriff's Office policies and procedures. On September 16th, 2019, Plaintiff met with Sheriff Bill E. Waybourn. The Chief of IAD, Steven Sparks, provided Sheriff Waybourn with a recording device prior to our meeting. Plaintiff stated to Bill E. Waybourn that several individuals were attempting to terminate Plaintiff. Plaintiff also disclosed reasons why he could not be assigned under Lt. Ford, as he witnessed and reported uninvestigated criminal activities allegedly committed by the Lieutenant. Bill E. Waybourn admitted and confirmed that several individuals were attempting to terminate Plaintiff, but he had to stop it. Sheriff Waybourn then assured Plaintiff he was going to put up some "firewalls". Sheriff Bill E. Waybourn advised Plaintiff he and a Lieutenant, who Plaintiff trusted, were going to investigate the excessive use of force. Plaintiff believed engaging in this protected act would bring some relief.

59.    Like the complaint that included Deputy Jay Rotter allegedly consuming a prohibited substance on duty, Sheriff Waybourn failed to act. Plaintiff had met with Federal Bureau of Investigation Agents years prior to report some of his findings. The agent contacted the Tarrant County District Attorney's Office in front of Plaintiff, and he summed it up as TCDA Office was going to handle it. On or about October 14th, 2020, again Plaintiff met with FBI Special Agent(s) who advised to meet with Sheriff Bill Waybourn and provide him with the same

information Plaintiff provided them. Plaintiff met with Sheriff Bill E. Waybourn but he never did any investigation or provided any response to what Plaintiff disclosed. After the meeting, Chief Charles Eckert intercepted the Plaintiff as he was in the meeting where Sheriff Waybourn mentioned what Plaintiff stated. Chief Eckert strongly advised not to say anything about Lt. Ford. Chief Eckert suggested Plaintiff to be under his command and be quiet. In return, no one would "jack with" Plaintiff (see urbandictionary.com). Chief Eckert had a very stout conversation with Plaintiff as you could hear it in his voice and see it in his demeanor. Chief Eckert ordered Plaintiff to falsify his time sheet. When challenged on the obvious, Chief Eckert stated he was the Chief and could do what he wanted.

60.     Due to Plaintiff's experience of being assaulted by his supervisor, being coerced into signing an NDA, again retaliated upon, and being adversely reassigned, Plaintiff requested was approved for intermittent and consecutive Family Medical Leave (FML). Plaintiff was on consecutive FML from September 16th, 2020, to October 31. 2020.

61.     During Plaintiff's consecutive leave, Lt. Ford sent several deputies to Plaintiff's residence to further harass and intimidate Plaintiff and his family without cause. On September 29, 2020, Plaintiff called and spoke with his direct supervisor Sergeant Thomas Wall about his newly assigned position. Sgt. Wall instructed Plaintiff to write an email according to the policy to grieve.

62.     Plaintiff attempted three times to utilize Tarrant County Sheriff's Office's policy in reference to adversely being reassigned. Directly speaking with the Sheriff, speaking with Plaintiff's direct supervisor and per Chapter 13 of the TCSO Civil Service Rules (see exhibit 11). The email was ignored, which violated their own policies (TCSO Civil Service Rules in chapter 13 and 16.03) (First Amendment Right) when combating retaliation. Plaintiff emailed Sheriff

Waybourn for an update and got a response from his undersheriff advising both agreed with how their command staff were treating Plaintiff. Plaintiff understood Defendants' plan and it was learned Plaintiff was strategically placed under said chain of command to finish what Defendants attempted to previous achieve, terminate Plaintiff. The bond desk position Plaintiff was newly assigned to was previously assigned to Lt. Floyd Heckman's nephew. Lt. Heckman's nephew was moved to the courts division to make a position available for Plaintiff under Charles Eckert's command. Chief Eckert recently voted to have Plaintiff terminated but according to their policies Plaintiff did not have enough negative progressive discipline (see exhibit 1). The Tarrant County Sheriff's Office management could continue its retaliation through appraisals to show a decline in Plaintiff's performance to later terminate Plaintiff. The assignment was also ideal to be a less desired position for Plaintiff to quit as Plaintiff has an active nature for productivity. Plaintiff returned to work in the beginning of November 2020.

63.    Subsequently, Plaintiff's initial EEOC charge was transferred to the Dallas District EEOC office on or around November 17, 2020. Defendant was then notified that the Dallas District EEOC office required Defendant to submit a Position Statement regarding Plaintiff's amended charge.

64.    On or about December 22, 2020, Plaintiff filed another EEOC charge, a protected act, related to the continuous retaliation conducted by the Defendants. Chief Eckert had several motives to assist in the relations of Plaintiff. In addition to the relationships Chief Eckert had with the beforementioned Lieutenants, Chief Eckert was demoted due to Plaintiff discovering a training error that could have lost Tarrant County Sheriff's Office its training license. The Plaintiff did not receive more than 160 TCOLE training hours as Tarrant County Sheriff's Office Academy did not report training hours according to TCOLE administrative rules. Chief Deputy Eckert was involved

in IAD investigations against Plaintiff and knew details related to his EEOC complaint. Plaintiff also reported being assaulted to Chief Eckert and he disregarded Plaintiff's reporting of being assaulted by his supervisor.

65.    Plaintiff had to endure being supervised by Lieutenant Ford as Chief Eckert falsified Plaintiff's performance appraisal. Chief Eckert changed Plaintiff's performance appraisal after it was completed by Plaintiff's previous supervisors. Without the knowledge of these supervisors or Plaintiff, Chief Eckert changed the rating and wording to reflect working and performance attributes like Lt. Hallenbeck and Lt. Heckman's appraisal evaluation of Plaintiff. Chief Eckert also changed Plaintiff's timesheet to reflect Plaintiff had FML prior to September 16, 2020. This fraud is a violation of Tarrant County Sheriff's Office policy, Chapter 10.03 and acts prohibited by 18 U.S.C. 2071(a). Plaintiff was not properly trained on his new assignment as Lt. Ford was agitated with Plaintiff as he was taking FML days which prolonged the training period. On November 28th, 2021, Lt. Ford shortened the training time and released Plaintiff. Lt. Ford advised the Plaintiff to not worry about the training and ordered Plaintiff to maintain security in the lobby area. Plaintiff noticed a change in his performance appraisal. On or around December 12th, 2020, Plaintiff met with Sgt. Wall. Sgt. Wall advised Chief Eckert completed his performance evaluation. According to the Tarrant County Sheriff's Office policies, there is a process for performance appraisals hierarchy input. During the same period, Plaintiff contacted his previous supervisors, and they advised what they placed in his appraisal. They advised it had been negatively altered without their consent and/or knowledge. Tarrant County, and Sheriff Bill Waybourn allowed Plaintiff to again be retaliated against by gross negligence.

66.    On or about January 14th, 2021, Plaintiff suffered a total of four unpaid days off from a series of retaliatory IAD processes.

67.     Furthermore, the Plaintiff was ordered by Lt. Ford to do things that were unreasonable and custom to only the Plaintiff. Plaintiff requested Lt. Ford to ask the previous supervisors to locate his property. Lt. Ford advised he would attempt to find it. Shortly thereafter, Plaintiff was ordered by Lt. Ford to bring an item that Plaintiff could not have possessed as he turned the item(s) in when the items were seized upon his transfer. The order was to have the item back to him within 24 hours or it would be considered as insubordination. There was not an update on Plaintiff's property until after Plaintiff filed the police report about his missing or destroyed property to the Fort Worth Police Department on or about March 22nd, 2021. Plaintiff's previous supervisor sent a box of items that did not belong to Plaintiff with similar items Plaintiff was claiming to be missing. Around about the same time, Plaintiff was ordered to work unpaid overtime and denied his FML. Plaintiff utilized his FML and routinely had a schedule that helped him deal with the unwarranted stress he was experiencing while under the command of the individuals Sheriff Bill E. Waybourn advised he was going to create a "firewall" to. Sheriff Waybourn then and there clearly understood what was happening to Plaintiff was unconstitutional.

68.     On or around April 13th, 2021, Plaintiff requested training. Plaintiff was granted eight (8) hours of training for his Texas Peace Officer License by Sgt. Wall. In response to that training request, Lt. Ford then ordered Plaintiff to complete the 40 hours of his training cycle even though it wasn't due for nearly a year. Lt. Ford advised Plaintiff had to complete the training in seven (7) days or it would be considered insubordination. The plaintiff was denied requested training and had to figure it out. Even with what seemed to be impossible orders, Plaintiff completed the demands. Tarrant County Sheriff's Office employs hundreds of Texas Peace Officers and there were no other peace officers required to follow that order. Never in Plaintiff's career had he experienced such scrutiny and unwelcomed conduct permitted by a sheriff.

69.     Sheriff Bill E. Waybourn intentionally placed Plaintiff and others in harm's way as he neglected to act on anything Plaintiff reported or requested. Investigating anything the Plaintiff had reported was deliberately concealed and was not taken seriously. This confirmed the Plaintiff's previous concerns that the internal affairs unit was being abused, at times to favor and at other times to improperly punish others. This was one of those times for the Plaintiff.

70.     In or around April 2021, Plaintiff was again suspended pending an IAD investigation conducted by Lt. Kuser. Lt. Kuser, who previously violated Plaintiff's Fourth Amendment Rights and was an associate of Chief Eckert and Lt. Ford executed their complaint against Plaintiff, on July 27, 2021, as Plaintiff was terminated due to a Martin Luther King quote, *"Injustice and corruption will never be transformed by keeping them hidden, but only by bringing them out into the light and confronting them with the power of love."*

71.     Chief Eckert sent his IAD team an email congratulating them for finally getting Plaintiff. Sheriff Bill Waybourn agreed with their actions and signed off on the final disciplinary decision. Plaintiff was terminated for something no one had ever been disciplined for.

72.     On or about August 18, 2021, Plaintiff again filed an EEOC Charge. Around the same time, the charges were transferred to the Department of Justice (DOJ) due to the severity of the allegations and the complexity of Plaintiff's complaint.

73.     The institution of Plaintiff's suspension and or the termination was an adverse employment action in retaliation for Plaintiff's engaging in the activity of filing an EEOC Charge of Discrimination. The Plaintiff had further reported alleged acts to Sheriff Bill E. Waybourn, a protected act, as a citizen and as a professional.

74.     Plaintiff did not violate any policy or procedures of the Tarrant County Sheriff's Office but was disciplined and managed differently from other coworkers. Plaintiff appealed the

decision on or about June 2021. Upon the appeal process, through the Tarrant County Civil Service, Plaintiff had to contend with ranking member(s) committing perjury if not aggravated perjury. The ruling was upheld in or around February 2022.

75.    As if wrongfully terminating Plaintiff's employment was not enough or excessive, Defendants continued to sabotage Plaintiff's career opportunities with other employers. Plaintiff further appealed to the Defendants efforts to damage Plaintiff's career through an Administrative Hearing as the Defendants issued Plaintiff a dishonorable F-5 report of separation.  An F-5 is a peace officer's work referral within law enforcement and is required to be maintained in a positive status to obtain gainful employment. A negative report is an automatic disqualification when seeking employment elsewhere. Example: A law license (bar card) is required for an attorney to practice law in the state. Regardless of the discharge designation, Tarrant County does not typically pursue individuals in F-5 determinations appeals. On or about May 18th, 2023, the F- 5 hearing was held before a Texas administrative judge. During the F-5 administrative hearing, Plaintiff once again had to deal with dishonest individuals in high command during an official proceeding. While under oath, Lt. Hallenbeck was asked a material question during the official proceeding.  She hesitated and asked the Tarrant County's attorney, David Hudson, if the "truth' should be told. The response to the question was intentionally untrue which constituted aggravated perjury, according to the Texas Penal Code sec. 37.03. David Hudson noticed the perjury and attempted to shield Lt. Hallenbeck from answering addition questions in the best interest of Tarrant County. Even with criminal acts, Tarrant County does not see a conflict of interest but does see a conflict of interest for holding employee violators of law accountable.  This criminal action was the last known adverse/overt act or active retaliation committed by Tarrant County and or its supervisors to conceal their actions of the conspiracy. Tarrant County District Attorney's Office was made

aware of this criminal action and the furtherance of violation of Tex. Gov't Code § 554.002(a). Not even a perjury/aggravated perjury. This response did not come as a surprise as this was routine for Tarrant County and its management. The administrative judge had to confirm Tarrant County's designation based on Tarrant County's actions or lack thereof.

76.     The date, May 18, 2023, relates to the Texas and Federal statutes of limitations (May 18, 2025) for Plaintiff to file his timely suit upon receiving his right to sue letter(s) from the EEOC and DOJ. May 18, 2023, relates to the State of Texas statute of limitation for any criminal activities arising from Texas Penal Code Section 15.02, Criminal Conspiracy. This same date also relates to the statute of limitation for any federal criminal acts defined in sections 18 U.S. Code 241, 242; 34 U.S.C 12601; 42 U.S.C. 1983 (2023) which is five (5) years, May 18, 2028. Tarrant County's failure to train, investigate and discipline named individual defendants of this suit provoked said defendants to execute their plan against Plaintiff to protect their careers, pensions, and livelihoods. Further, Tarrant County's intent went beyond negligence as Tarrant County's policy makers, Tarrant County Commissioner Court, were aware or should have been aware of their employee's actions. Tarrant County, through its administration, Sheriff (Bill Waybourn), Sheriff's Department and District Attorney's Office, elected to allow and assist said defendants to maliciously violate Plaintiff's constitutional rights. During the alleged period of violations and current date, Tarrant County and its elected officials continue to deprive Plaintiff of his state and federal constitutional rights as a victim daily as of June 11th, 2024. Tarrant County, through its District Attorney used its prosecutorial discretionary power on more than four occasions and made it practice or policy when Plaintiff made a complaint or other related motions. Plaintiff has requested and demanded the full investigation into his claims through Tarrant County and its associates. Tarrant County suspended its promotion policies on an occasion to attempt to avoid

violating Plaintiff rights as well. Tarrant County intentionally ignored Plaintiff's request to not be placed under known supervision that had malicious intent towards Plaintiff.

77.    The Tarrant County Sheriff's Office and its representatives violated the Public Information Act by concealing and destroying material that would have benefited the Plaintiff during these processes, further infringing on his rights. Tarrant County and Tarrant County Sheriff Bill E. Waybourn are aware of this and other facts and have refused to act upon it, further concealing the truth. Failure to act by Tarrant County and Tarrant County Sheriff's Bill E. Waybourn should never be an accepted policy. Tarrant County and Sheriff Bill E. Waybourn acknowledged Plaintiff was a target and failed to prevent further retaliation (Texas Penal Code 36.06). The Defendant's action and inactions have caused grave harm to Plaintiff. The same individual defendants who were involved as decision makers or actors in Plaintiff's final job action regarding each adverse action (unpaid overtime, unpaid days off, FMLA violations, termination, F-5 designation and etc.) were mostly the same individuals or associates of Plaintiff's formal complaints to Tarrant County Human Resources.

78.    On December 18th, 2023, the DOJ issued Plaintiff with the Right to Sue letters. According to the prohibited employment policies or practices that are enforced by the EEOC under Title VII, and the Federal Constitution, 42 U.S.C. §§ 1983 et seq., Texas Whistleblower's Act Tex. Gov't Code § 554.002(a). Plaintiff moved forward to obtain relief of Defendant's continuous actions.

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
### (Retaliation)

79.    Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

80.    Plaintiff engaged in protected employment activities through the submission of his charges of discrimination with the Fort Worth Human Rights Commission and the EEOC.

81.    The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Defendant has engaged in retaliatory acts with respect to the terms and conditions of Plaintiff's employment.

82.    Plaintiff's requests for relief are set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**Federal Constitution, 42 U.S.C. §§ 1983 et seq.**
**(1st, 4th, 5th, 6th, 14th Amendment)**

83.    Plaintiff engaged in a protected act when he reported criminal activities and civil violation conducted by Defendants to state and federal entities, as it fully set forth herein.

84.    Plaintiff previously engaged in protected employment activities through the submission of his charges of discrimination with the EEOC and DOJ.

85.    The conduct alleged herein violates the Federal Constitution, 42 U.S. C. 1983 as Defendant has engaged in constitutional violations and retaliatory acts with respect to the terms and conditions of Plaintiff's employment.

86.    Plaintiff's **1st U. S. Constitutional Amendment Right** was revoked and violated by Defendants when he was disciplined and further retaliated upon when he personally and professionally reported unlawful action allegedly committed by Defendants. Plaintiff engaged in protected speech when he made these reports. Plaintiff was continuously retaliated upon pursuing this fact.

87.    Plaintiff's **4th U. S. Constitutional Amendment Right** was revoked and violated by Defendants when he was unlawfully detained and advised he was not free to leave.

88.     Plaintiff's **5th U. S. Constitutional Amendment Right** was revoked and violated by Defendants when he was unlawfully detained, advised he was not free to leave and he did not have any rights against self-incrimination.

89.     Plaintiff's **6th U. S. Constitutional Amendment Right** was revoked and violated by Defendants when he was unlawfully detained, advised he was not free to leave and he did not have any rights against self-incrimination and did not have any right to counsel in regards to a criminal matter.

90.     Plaintiff's **14th U. S. Constitutional Amendment Right** was revoked and violated by Defendants when he was unlawfully detained, advised he was not free to leave, he did not have any rights against self-incrimination and he did not have any right to counsel in regards to a criminal matter. Plaintiff was deprived of due process and equal protection under the rule of law while being discriminated and retaliated upon.   The violations against Plaintiff's U. S. Constitutional Rights were conducted during the commission of felonies according to the State of Texas and Federal criminal laws. The individual Defendants are all of Caucasian ethnicity and Plaintiff is of African- American ethnicity. The Defendants have been given special privileges and/or immunities to accountability.   Unlike the Defendants, who was given special privileges, Plaintiff was not provided the simplest of lawful protection. Equal Protection refers to the idea that a governmental body may not deny people equal protection of its governing laws. The governing body state must treat an individual in the same manner as others in similar conditions and circumstances. Plaintiff has been deprived of liberty as he attempted to pursue justice through legal means but was continuously met with oppressive obstruction of justice from Defendants.

91. Defendants strategically placed Plaintiff in harm's way on several occasions and eventually terminated Plaintiff's employment while further obstructing justice, committing fraud and perjury in the efforts to continue to harm Plaintiff through administrative processes.

92. Plaintiff's requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Discrimination)**

93. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

94. Plaintiff engaged in protected employment activities through the submission of his charges of discrimination with the Fort Worth Human Rights Commission and the EEOC.

95. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as Defendant has engaged in retaliatory acts with respect to the terms and conditions of Plaintiff's employment.

96. Plaintiff's requests for relief are set forth below.

### Violation of the Texas Whistleblower Act Tex. Gov't Code § 554.002(a)

97. Texas's Whistleblower Act prohibits a state or local governmental entity from taking adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."

98.     Plaintiff reported to the proper outlet about Defendants' violations. A response to Plaintiff's reporting criminal and administrative violation was termination of his employment and further retaliation through his license(s).

99.     Defendant's actions are prohibited according to Texas laws that are designed to protect a reporting party.

## INJUNCTIVE RELIEF -- REINSTATEMENT

100.     Plaintiff seeks reinstatement of his position as a deputy in addition to promotion(s) of the Tarrant County Sherriff's Office.

## DEMAND FOR JURY TRIAL

101.     Plaintiff demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

A.  A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq. and the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*; Texas Whistleblower Act Tex. Gov't Code § 554.002(a), Federal Constitution, 42 U.S.C. §§ 1983 et seq.

B.  All damages which Plaintiff has sustained because of Defendant's conduct, including back pay ($136,627.04), front pay, benefits, general and specific damages for lost compensation, and job benefits and opportunity he would have received but for Defendant's retaliatory practices, violations of amendment rights and for emotional distress, humiliation, embarrassment, anguish, economic damages for the deprivation

of his first, fourth, fifth, sixth and fourteenth constitutional rights and the loss of enjoyment of life between $300,000 to more than $1,000,000.

C. Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless, and/or intentional conduct; Plaintiff seeks full reinstatement with employee file to reflect pre 2018 status with suspensions and discipline expungement of any derogatory work record; be promoted on both denied attempts to promote; provided his 160 hours of unreported training hours.

D. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable, any future attorney's fees, expert witness; his costs incurred herein and for such other relief deemed appropriate by the Court, fees and other costs;

E. Pre-judgment and post-judgment interest, as provided by law.

Plaintiff further demands that it be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: June 09, 2024

Respectfully submitted,

Brandon Walker

1114 Greenview Lane

Kennedale, Texas 76060

Telephone:214-840-9589

Email:bwalker1981@yahoo.com

Exhibits:

Ex 1. Tarrant County Sheriff's Department Civil Service Rules and Tarrant County Sheriff's Office Standard Operating Procedures

Ex 2. Initial written complaint

Ex 3. Human Resource Complaint

Ex 4. Tarrant County Sheriff's Office Covert Recording Directive

Ex 5. Agreement to Mediate

Ex 6. Administrative Investigation

Ex 7. Plaintiff's Timesheet

Ex 8. Milton Kuser Sworn Statement

Ex. 9. State's Disclosure

Ex 10. State Disclosure Compliance Form

Ex 11. Grievance for Adverse Reassignment