# TRAFFIC STOP ALLEGATIONS: FAILURE TO IDENTIFY

On Friday, October 19, 2018, the Tarrant County Sheriff's Office (TCSO) received Deputy Brandon Walker's 7-paged formal complaint, dated Friday, July 20, 2018 that was submitted to the Tarrant County Human Resources Equal Employment Opportunity specialist Mr. Jay Singleton. On Thursday, October 25, 2018, the TCSO received another formal complaint, consisting of 17 pages and signed by Deputy Walker, which detailed more elaborate information regarding various alleged acts of discrimination. During the course of this administrative investigation, the TCSO learned about two unrelated traffic stops that involved Deputy Walker.

This information was discovered by attorneys of the Tarrant County District Attorney's Office during interviews with TCSO supervisors. In addition, this information was separate and unrelated to the complaints that were filed by Deputy Walker on July 20th and October 19th. It is alleged that Deputy Walker failed to identify himself during each traffic stop and presented his undercover narcotics investigator driver's license to a TCSO deputy on these calls. According to the State of Texas Penal Code, ***38.02 Failure to identify*** *(b) a person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has (2) lawfully detained the person.* This is a criminal offense and a class B misdemeanor.

For clarification purposes, the alleged acts of inappropriate conduct by a TCSO has been summarized as follows and are not listed in any particular order:

(#1) Incident: Traffic stop TCSO event #2017-112348
(#2) Incident: Traffic stop TCSO event #2017-144043

The following information was primarily obtained during recorded interviews and from the TCSO Patrol Division event reports.

## (#1) Incident: (Traffic stop - TCSO event #2017-112348)

On May 26, 2017, at approximately 0116 hours, South Division Patrol Deputy Cody Harris (district unit C51) conducted a traffic stop in the 6100 block of Crowley Road in Edgecliff Village, Texas on a 2013 black Dodge Challenger that displayed Texas license plate (GGB3958). Deputy Harris initiated a probable cause traffic stop after he witnessed the vehicle speeding. The driver of the vehicle was eventually warned for speeding and released from the scene.

### (A.) Investigation:

According to Deputy Harris, he acknowledged conducting a traffic stop in the 6100 block of Crowley Road on black, 2-door Dodge Challenger on May 26th. The vehicle was pulled over for speeding in a posted 40 miles per hour (MPH) traffic zone. Deputy Harris approached the vehicle and identified himself as a TCSO deputy and explained the reason for the traffic stop to the driver. Deputy Harris said the driver, a black male who was wearing a baseball hat, did not identify himself initially. The driver did not provide his driver's license at first because he argued with

Deputy Harris about the traffic stop. The driver claimed it was not a posted 40 MPH zone and knew it was greater than 40 MPH. Deputy Harris said he made several requests to obtain his driver's license when the driver then said something to the effect you, "*I'm one of you guys.*" Deputy Harris then questioned the driver's comment. Deputy Harris said the driver finally provided his TCSO identification card to him along with his Texas Commission on Law Enforcement license, which identified him as Deputy Walker. At this point, Deputy Harris said he handed these items back to Deputy Walker, gave him a verbal warning for speeding, and cleared the traffic stop. Deputy Walker never presented his personal driver's license during this traffic stop.

Deputy Harris said he sent his supervisor, Patrol Sergeant Refus Rundles, a message about the traffic stop before the end of his shift that night. Later on, he received a call from Lieutenant Don Harris, who questioned Deputy Harris about the stop and speed limit. Deputy Harris said Lieutenant Harris joked with him about not knowing his speed limits; however, Deputy Harris was actually correct about the speed limit. Nothing resulted from this traffic stop from what he could recall.

Deputy Walker remembered being pulled over by Deputy Harris on May 26th. According to Deputy Walker, Deputy Harris told him that he had been pulled over for speeding. Deputy Walker said he was driving approximately 35 (MPH) because he saw the patrol unit in the middle of the roadway on Crowley Road. Deputy Walker said he never contested the posted speed limit and Deputy Harris did not tell him how fast he was speeding. When asked how he identified himself, Deputy Walker said he provided his personal driver's license and that Deputy Harris recognized him.

Deputy Walker said he told Deputy Harris he was an officer as some point because he (Harris) already knew him. He also claimed that he gave Deputy Harris his driver's license, his TCSO identification card, and advised he had a firearm in his vehicle. Deputy Walker said he received a verbal warning for the speed then released from the traffic stop.

**(B.) Finding:**

**Not Sustained - The investigation failed to disclose sufficient evidence to substantiate the allegations.**

There was no information to support the allegation that Deputy Walker failed to identify himself when he was pulled over for speeding on May 26th by Deputy Harris. According to the call screen notes, Deputy Harris notated "*TCSO Employee*" and "*PC: Speeding-Warned.*" Deputy Harris said Walker provided him with his TCSO identification card and his TCOLE identification card, which confirmed Deputy Walker's identity, but not his actual driver's license. Deputy Walker did not provide his narcotics driver's license during this traffic stop, according to Deputy Harris. Deputy Walker proved his identity by producing his TCSO ID card and from Deputy Harris recognizing him.

Lieutenant Glen Richardson was unable to review any possible recorded video of the traffic stop due to the video and/or audio recordings being lost, corrupted, or destroyed once the new video system was merged and implemented.

**(#2) Incident: (Traffic stop - TCSO event #2017-114043)**

On July 7, 2017, at approximately 0232 hours, South Division Patrol John Rodriguez (district unit C61) conducted a traffic stop at 7899 Crowley Road/Sycamore School Road in Fort Worth, Texas on a 2013 black Dodge Challenger that displayed Texas license plate (GGB3958). Deputy Rodriguez initiated a probable cause traffic stop since he witnessed the vehicle speeding. The driver of the vehicle was eventually warned for speeding and released from the scene.

**(A.) Investigation:**

According to Deputy Rodriguez, he acknowledged conducting a traffic stop at 7899 Crowley Road on a black Dodge Challenger. The vehicle was pulled over for speeding. Deputy Rodriguez said the posted speed was 55 miles per hour (MPH) and the Dodge Challenger was traveling at 72 (MPH). Deputy Rodriguez approached the vehicle and identified himself as a TCSO deputy and explained the reason for the traffic stop. Deputy Rodriguez said the driver, a black male, provided him with a driver's license, later identified as a narcotics driver's license, and was acting standoffish, not very cooperative, and like his time was being wasted.

Deputy Rodriguez went back to his vehicle and checked it, but the driver's information did not match the vehicle's registered owner information. Deputy Rodriguez made contact with the driver again and asked who the vehicle belonged to. The driver said he was the owner. Deputy Rodriguez told the driver that his driver's license information did not match the vehicle's information. At this time, Deputy Rodriguez said the driver produced his actual driver's license and his TCSO identification card. The name on the second driver's license was displayed as "*Brandon Walker,*" which matched the vehicle's information.

Deputy Rodriguez then questioned Deputy Walker about why he never identified himself as a TCSO employee or an officer once he initially made contact with him. Since Deputy Walker did not say anything, Deputy Rodriguez rechecked his actual driver's license in his patrol unit and confirmed all the information matched. Deputy Rodriguez returned to the vehicle and told Deputy Walker his behavior was unprofessional when he failed to identify himself as a peace officer and tried to pass off a fake ID. He also said their jobs were hard enough as it is and there was no reason to deal with any foolishness. According to Deputy Rodriguez, Deputy Walker was standoffish and seemed like he did not care. He just wanted to get his identification card and go about his business. Deputy Rodriguez said he gave Deputy Walker a warning for speeding, but not for failing to identify. Deputy Rodriguez told him to have a nice day and cleared the call. Deputy Rodriguez said he then passed this information on to his supervisor Sergeant Rundles before the end of his shift.

Deputy Walker remembered being pulled over, but he could not recall any specifics about the traffic stop. Whenever he realized that he was being pulled over, Deputy Walker said he pulled over, kept his vehicle lights on, let both of the windows down, put both hands on the steering wheel, and had all his information ready before the officer exited his unit. Deputy Walker said he gave Deputy Rodriguez his personal driver's license.

When asked for clarification about which driver's license was provided, Deputy Walker said he could not recall whether or not he gave his narcotics driver's license or his personal driver's license. Deputy Walker said he had both of his driver's license in his wallet and he could have handed his narcotics driver's license to Deputy Rodriguez, but he could not remember.

Deputy Walker further explained that he intended on providing Deputy Rodriguez with his personal driver's license, but he could have mistakenly handed him the other one. Deputy Walker said there was no reason to give Deputy Rodriguez his narcotics driver's license because he did nothing wrong. When asked if it would have been appropriate to give his narcotics credentials, Deputy Walker replied, "*No.*" He was then asked if he had, would that act be a criminal violation. Deputy Walker replied, "*No.*"

Deputy Walker explained there was no offense because the "intent" of his actions would have to be considered. Deputy Walker then said based on his recollection of the traffic stop, he was one hundred percent sure that he never gave Deputy Rodriguez his narcotics driver's license, even though he claimed he could not remember the call initially. Deputy Walker said it was never his intent to give him an incorrect driver's license, but he probably did unintentionally. Deputy Walker said he was given a verbal warning for speeding and released from the traffic stop.

**(B.) Finding:**

**Not Sustained - The investigation failed to disclose sufficient evidence to substantiate the allegations.**

**(C.) Conclusion:**

There was no information to support the allegation that Deputy Walker failed to produce his actual Texas driver's license when he was pulled over for speeding on July 7th by Deputy Rodriguez. According to the information that was gathered, Deputy Rodriguez said Deputy Walker provided him with fake identification until he further questioned him about his identity and vehicle information. Deputy Walker then provided him with his actual Texas driver's license. Deputy Rodriguez issued Deputy Walker a verbal warning for speeding, but not for failing to identify once he was legally detained on a traffic stop.

Lieutenant Glen Richardson was unable to review any possible recorded video of the traffic stop due to the video and/or audio recordings being lost, corrupted, or destroyed once the new video system was merged and implemented. It should also be considered that due to the absence of video and audio recording from the traffic stop, it is difficult to determine whether or not Deputy Walker's actions were by mistake or deliberate.

An offline search was conducted in the Texas Law Enforcement Telecommunications System (TLETS) database by the Texas Department of Public Safety to determine which of the alleged driver's licenses was ran by Deputy Rodriguez on July 7th. According to the *TLETS Offline Search/Audit Report*, only Deputy Walker's personal driver's license information was logged. In addition, a search was conducted on all of Deputy Rodriguez' patrol activity on July 7th; however, there was no evidence that suggested Deputy Walker's narcotics credentials was ever ran by Deputy Rodriguez.