IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BRANDON WALKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00245-BP |
| | § | |
| TARRANT COUNTY | § | |
| SHERIFF'S OFFICE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are the Motion for Summary Judgment (ECF No. 145) and brief in support (ECF No. 146) that Tarrant County ("the County") filed on October 30, 2025; the Response that Brandon Walker filed on December 4, 2025 (ECF No. 156); and the Reply that the County filed on December 17, 2025 (ECF No. 157). After considering the pleadings and applicable legal authorities, the undersigned **GRANTS** the Motion in part (ECF No. 145).

**I.     BACKGROUND**

The County employed Walker as a deputy sheriff from May 2011 to July 2021. ECF No. 147-1 at 3-4. During his tenure, Walker alleges that he "was denied worked overtime, was subjected to being called racial names[] in the presence of command staff . . . worked in a hostile working environment, was denied training for advancement opportunities; was treated differently than other coworkers due to race and was retaliated upon." *Id.* at 6-7. Walker also contends the County retaliated against him by transferring him from the highly specialized Combined Narcotics Enforcement Team ("CNET") to the Patrol Division. *Id.* at 32. Walker filed his first Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") "in

or around August 15, 2018," claiming that the County retaliated against him for complaining about his ill-treatment in the CNET from 2015 to 2017. *Id.* at 6-7.

Later, the County suspended Walker without pay for three days pending the results of an Internal Affairs Division ("IAD") investigation in which the County allegedly detained Walker to resolve his harassment complaints. *Id.* at 16-17. In response, Walker filed a second Charge of Discrimination "on or about December 22, 2020 . . . . [for] continuous retaliation . . . ." *Id.* at 20-21. On July 27, 2021, the County terminated Walker's employment. *See id.* at 23, 39 at 2.

Walker sued the County on March 15, 2024. ECF No. 1. His Second Amended Complaint alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1983, and various state laws. ECF No. 37 at 30. On January 7, 2025, Chief United States District Judge Reed O'Connor accepted the recommendation of the undersigned (ECF No. 65) and dismissed all of Walker's claims except for those against the County for retaliation under Title VII. ECF No. 68. Under the live pleadings, Walker asserts that the County retaliated against him by transferring, suspending, and terminating him due to his filing Charges of Discrimination. *Id.* at 6-7, 27-29. Chief Judge O'Connor reassigned the case to the undersigned following consent of the parties. *See* ECF Nos. 72, 74.

## II.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). "To satisfy this burden, . . . if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, [the movant may] demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).

When a movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant but only when both parties have submitted evidence of contradictory

facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Such evidence need not be in an admissible form but must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). A party adverse to a motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." *Duplantis*, 948 F.2d at 190 (citing Fed. R. Civ. P. 56(e)). Instead, the response "by affidavits or as otherwise provided in [Rule 56(c)], must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 190-91.

Overall, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242-43. The Court grants the movant's motion for summary judgment only if it meets its burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

    **B.**    **Title VII retaliation**

The antiretaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 576-77 (5th Cir. 2020) (quoting 42 U.S.C. § 2000e-3(a)).

A plaintiff may prove his retaliation claim "either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Direct evidence includes "statements or documents which show on [their] face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). But it is the "rare" case that contains direct evidence of retaliation, and "a plaintiff ordinarily uses circumstantial evidence." *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994).

When a plaintiff bases his retaliation claim on circumstantial evidence, the Court invokes the burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Brown*, 969 F.3d at 577. "Under this framework, the plaintiff has the burden to prove a prima facie case of retaliation by showing (1) [he] engaged in a protected activity; (2) [he] suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* (internal quotation marks omitted). To be sure, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," *id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)), but at the *prima facie* stage, "a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Id.*

Title VII prohibits retaliation with adverse employment actions against employees who engage in protected activity. 42 U.S.C. § 2000e-3(a). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025). The practices of employers rendered unlawful by Title VII consist of:

5

> (1) [] fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) [] limit[ing], segregat[ing], or classify[ing] [] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

If the plaintiff establishes his *prima facie* case, only then does his employer have the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Id.* If the employer meets this burden, then the plaintiff once again bears a burden—this time to prove that the proffered reason is merely pretextual. *Id.* This framework gives the plaintiff the "burden of proving that 'but for' the discriminatory purpose" the adverse employed action would not have occurred. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). A plaintiff may establish pretext by showing a discriminatory motive "such as through evidence of disparate treatment, or that [his] employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

### III. ANALYSIS

    **A.** **Walker establishes a *prima facie* case as to his CNET transfer, performance evaluation, and the 2018 dishonesty investigation, but not as to the other three actions.**

In its Motion, the County asserts that Walker "cannot make a prima facie case of Title VII retaliation for any of" the six actions during his employment that he identifies as discriminatory. ECF No. 146 at 15. The County argues that even if Walker could make out a *prima facie* case, it "had legitimate, non-retaliatory reasons for each action." *Id.* To satisfy their burden as movants to "demonstrate that the evidence in the record insufficiently supports an essential element of

6

[Walker]'s claim," *Duplantis*, 984 F.2d at 190, the County attacks Walker's evidence for all three elements of a *prima facie* case for Title VII retaliation: (1) that he engaged in a protected activity, (2) that he suffered an adverse employment action, and (3) that a causal connection exists between the protected activity and the adverse employment action. *See generally* ECF No. 146 at 15; *Brown*, 969 F.3d at 577.

When a party properly moves for summary judgment, "Rule 56 . . . saddles the non-movant with the duty to designate the specific facts in the record that create genuine issues precluding summary judgment." *Jones v. Sheehan, Young & Culp, PC*, 82 F.3d 1334, 1338 (5th Cir. 1996) (internal quotation marks omitted). If there are facts that can defeat summary judgment, they are for the non-movant to identify and articulate for the Court. There is no duty "upon the district court . . . to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A properly entered summary judgment does not require the Court to search the entire record and find it "bereft of a genuine issue of material fact before summary judgment may be properly entered." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

Instead, the non-movant must offer evidence to defeat his opponent's summary judgment motion and include that evidence in response to the motion. The Court does not consider evidence beyond that which the non-movant presents in the response. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Accordingly, the Court must examine Walker's response (ECF No. 156) to the Motion (ECF No. 145) for "competent" evidence of his claims. *Id.*; *Douglass*, 79 F.3d at 1429.

1. Transfer from CNET and performance evaluation

    a. A genuine issue of material fact exists as to whether Walker engaged in a protected activity prior to the CNET transfer and performance evaluation.

Walker's first claimed instances of retaliation concern his November 2017 transfer from CNET to the Patrol Division and a May 2018 performance evaluation. ECF No. 147-1 at 6-7, 15, 18. The County argues that Walker did not engage in a protected activity prior to these instances and did not file his first written complaint with the County until July 2018. ECF No. 146 at 16.

In his response, Walker contends that he engaged in several examples of protected activity prior to the County retaliating against him. He asserts that "[i]n late September and or early October 2017 [he] made a report of racial discrimination to Commander Calvin Bond." ECF No. 156 at 9. Walker points to two post-deposition declarations from August 2025 to substantiate these contentions. ECF No. 155 at 399-401, 411-24.

The County argues that the Court should not consider Walker's declarations because of the sham-affidavit exception, and without them, Walker has provided no evidence of a protected activity prior to the CNET transfer and performance evaluation. ECF No. 157 at 7. "Under [the sham-affidavit] doctrine, a party cannot 'defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.'" *Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 458 (5th Cir. 2024) (citing *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022)). However, the bar to apply this doctrine "is a high one," and "typically require[s] affidavit testimony that is inherently inconsistent with prior testimony." *Id*. "A district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'"

*Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (citing *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1988)).

In his deposition, Walker affirmatively answered a question asking if his disparate treatment started after he began training Hallenbeck, and he agreed that the poor treatment started because he gave leadership his honest assessment of Hallenbeck's performance. ECF No. 147-1 at 10-11. In his post-deposition declaration, Walker claims that he reported a racially hostile environment and disparate treatment to his supervisor Commander Bond, and that these complaints led to his transfer and poor performance evaluation. ECF No. 155 at 400. While there are discrepancies between Walker's statements, they are not inherently inconsistent. It is possible that both Walker's honest assessment of Hallenbeck and his report to Commander Bond caused the allegedly discriminatory transfer and performance evaluation. Therefore, although Walker's post-deposition declarations assert new details, his testimony does not appear to be "so markedly inconsistent with [his] prior deposition as to constitute an obvious sham." *Clark*, 854 F.2d at 766.

For these allegedly adverse employment actions, Walker "set[s] forth specific facts showing that there is a genuine issue for trial." *Duplantis*, 948 F.2d at 190-91. He points to a specific part of the record to support his opposition to summary judgment and shows that a genuine issue exists for a jury to resolve concerning the cause of his adverse employment actions. Therefore, Walker has met his burden as to the first required element of a *prima facie* case.

> b. A genuine issue of material fact exists as to whether the CNET transfer and performance evaluation were adverse actions.

To establish the second required element of a *prima facie* case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

(citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotations omitted). "An employment decision tends to be 'materially adverse' when it changes 'job title, grade, hours, salary, or benefits.'" *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (citing *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

The County asserts that Walker's CNET transfer and performance evaluation were not materially adverse employment actions because Walker later filed a complaint and therefore the actions did not deter him. ECF No. 146 at 18. But the standard is not whether the actions deterred Walker from later filing a complaint but is instead whether they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68.

The County also argues that the performance evaluation was not a materially adverse action because it did not impact Walker's conditions of employment. ECF No. 146 at 20. In his Response, Walker asserts that both these actions qualify as adverse actions. While Walker does not specifically cite to the record, he is a *pro se* party, and the Court affords *pro se* briefs liberal construction, including in the summary judgment context. *Foster v. Bellamy*, No. 24-30454, 2025 WL 618109, at *1 (5th Cir. Feb. 26, 2025).

First, he asserts that the transfer from CNET to the Patrol Division was a materially adverse employment action because it meant less prestige, advancement potential, exposure to specialized narcotics work, and desirable hours. ECF No. 156 at 9-10. Next, he contends that the performance evaluation contained "a negative and subjective characterization" of his conduct and could affect his future opportunities because it showed a decline in his performance over time. *Id.* at 18, ECF No. 147-1 at 22, 31.

A reasonable jury could find that both the transfer and performance evaluation were materially adverse employment actions, because both "might have dissuaded a reasonable worker

from making or supporting a charge of discrimination." *White*, 548 U.S. at 68. Accordingly, Walker has met his burden to show that a genuine issue of material fact exists as to whether his transfer and performance evaluation were materially adverse employment actions.

### 2. 2018 dishonesty investigation

#### a. A genuine issue of material fact exists as to whether the investigation was an adverse action.

In December 2018, the IAD investigated Walker for dishonesty and conduct unbecoming an officer during an official investigation relating to his alleged use of an undercover identity during two traffic stops. ECF No. 147-4 at 19. The County placed Walker on paid leave during the investigation. ECF No. 14-1 at 42. IAD eventually found that the allegations could not be sustained, and Walker returned to work. *Id.* at 45, 46-48.

The County argues that while Walker established the first two elements of a *prima facie* case on this point, the 2018 investigation did not amount to a materially adverse employment action because the investigation did not worsen Walker's working conditions. ECF No. 146 at 21-22. In his Response, Walker describes in detail how and why the County retaliated against him and initiated the investigation to retaliate against him. ECF No. 156 at 4-7. Walker does not provide a specific evidentiary basis or case law citation for how the investigation and the County placing him on paid leave amounted to an adverse employment action. And while the Court need not "sift through the record in search of evidence to support [Walker's] opposition to summary judgment," the Court affords *pro se* briefs liberal construction. *Ragas*, 136 F.3d at 458; *Foster,* 2025 WL 618109, at *1.

In addition, Walker only needs to show that a genuine issue of material fact exists to defeat the Motion for Summary Judgment. A reasonable jury could find that the County placing Walker on paid leave and investigating him for misconduct amounts to an adverse employment action that

11

"might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68. Therefore, Walker has met his burden at this stage to show a genuine issue of material fact exists as to whether the investigation was an adverse action.

        b.  A genuine issue of material fact exists as to whether causation exists.

The County argues that Walker cannot sustain a *prima facie* retaliation claim because he cannot show causation for this action.

> To demonstrate that a causal link exists between the protected activity and the adverse employment action at the prima facie stage, an employee can show close enough timing between [the] protected activity and the adverse employment action. Alternatively, [he] can show cat's paw causation" if a person who has retaliatory animus uses a decisionmaker to bring about an intended retaliatory action.

*Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022).

To show a causal connection through timing, "[t]he protected act and the adverse employment action must be very close in time." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (internal citations and quotations omitted). The Fifth Circuit has "held that a period of two-and-a-half months, . . . , two months, . . . and six-and-a-half weeks . . . , are close enough to show a causal connection." *Id.* (internal citations and quotations omitted). And in an earlier case, the Fifth Circuit rejected a period of two months and eight days as not sufficiently close to establish a causal connection. *See Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401-02 (5th Cir. 2012). As a result, it appears that "very close" temporal proximity requires a period of two-and-a-half months or less.

Under the second approach to establishing causation, a "longstanding principle [exists] that, in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker." *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 306-307 (5th Cir. 1996)). While "[t]he statements and actions of ordinary employees are normally not imputable to the employer . . . when the person conducting

the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact." *Id.* (internal citations omitted). "The ultimate question, therefore, is whether the employee can demonstrate that others had influence or leverage over the official decisionmaker." *Id.* (citing *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001)).

In December 2018, the IAD investigated Walker for dishonesty and unbecoming conduct. ECF No. 147-4 at 19. Walker claims he engaged in a protected activity on August 15, 2018, when he filed an external race and retaliation complaint with the EEOC and Fort Worth Human Relations Commission. ECF No. 156 at 20. He then filed a parallel internal complaint with the County on October 15, 2028. *Id.* Both complaints constitute protected activities because they alleged violations of Title VII protections against racial discrimination. *Lewis*, 134 F.4th at 295, 42 U.S.C. § 2000e-2(a).

The County filed its IAD complaint on December 14, 2018. ECF No. 146 at 22-23. Because a reasonable jury could conclude that the adverse employment action occurred within a three-month window from Walker's protected activities, Walker successfully established causation and therefore a *prima facie* case as to this element of his claim.

### 3. First and second insubordination suspensions

In the County's Motion, it argues that Walker does not establish a *prima facie* case as to the first and second insubordination suspensions because he does not show that causation exists between his protected activity and the adverse employment action.

#### a. The first insubordination suspension

On September 14, 2020, the County suspended Walker for three days without pay for insubordination. ECF No. 147-1 at 62. Walker engaged in several protected activities between September 2017 and August 2021, including filing a harassment complaint with Human Resources

13

in April 2020. ECF No. 156 at 65, ECF No. 147-1 at 51. However, Walker does not argue and does not provide any evidence that he engaged in a protected activity within a three-month window prior to his first insubordination suspension on September 14, 2020. Therefore, he cannot establish causation through timing.

Walker contends that cat's paw causation applies because biased County employees influenced or manipulated decisionmakers through tainted information and were attempting to terminate his employment. ECF 156 at 49-50. However, Walker provides no evidence that "others had influence or leverage over the official decisionmaker." *Gee*, 289 F.3d at 346. He does not point to anywhere in the record to show that the person conducting the final disciplinary review served as the cat's paw of those with retaliatory motives. *Id.* Instead, Walker merely makes unsupported allegations that cat's paw causation should apply. An assertion without some degree of support is just an assertion, and at the summary judgment stage, freewheeling assertions cannot keep a case alive by themselves. Walker directs the Court to no evidence in the record it can review to support his contention. These deficiencies leave the Court with the conclusion that Walker has not shown that there is a genuine issue of material fact as to whether causation existed between his protected activities and his first insubordination suspension. Therefore, summary judgment is appropriate because Walker has not established a *prima facie* case.

                b.        The second insubordination suspension

The County suspended Walker for a second time on January 7, 2021. ECF No. 147-1 at 92. The only protected activity that Walker claims preceding this action was a report to Sheriff Bill Waybourn on September 16, 2020. ECF No. 156 at 65. But this report came more than three months before his second suspension. Therefore, he cannot establish causation through timing.

Walker again contends cat's paw causation exists because there was "a coordinated and approving attitude toward adverse employment actions taken shortly after Walker's protected activity." ECF No. 156 at 61. Yet he points to no evidence to substantiate this assertion or his assertion of cat's paw causation. Again, these unsupported assertions without evidentiary support are insufficient to establish that Walker's protected activities caused his second insubordination suspension, and therefore he does not make out a *prima facie* case. As a result, summary judgment is appropriate as to his second insubordination suspension.

        4.      Termination

The County also argues that Walker does not establish a *prima facie* case as to his termination because he does not show that causation exists between his protected activity and the adverse employment action. The County terminated Walker on July 27, 2021. ECF No. 147-1 at 4. The County asserts that Walker cannot show cat's paw causation, that his last protected activity was a year before his termination, and the termination came outside the three-month window to establish temporal causation. ECF No. 146 at 32-33. Walker claims for the first time in his Response that he engaged in a protected activity on June 15, 2021, less than two months before his termination when he filed a complaint regarding the County's Family and Medical Leave Act ("FMLA") practices. ECF No. 156 at 60.

However, Walker's complaint did not oppose "any practice rendered unlawful by Title VII" as the law requires. *Lewis*, 134 F.4th at 295. Walker did not "mak[e][a charge, testify[], assist[], or participat[e] in any investigation, proceeding, or hearing under Title VII" in reference to any discriminatory actions by the County because of "race, color, religion, sex, or national origin," because his complaint concerned the County's FMLA practices. *Id.*, 42 U.S.C. § 2000e-2(a). Because Walker's alleged report did not assert any violation of an unlawful employment

15

practice prohibited by 42 U.S.C. § 2000e-3, and he did not allege any other protected activities, he has not shown that he engaged in a protected activity within three months of his termination and therefore cannot establish temporal causation.

Walker also does not establish cat's paw causation. He provides no evidence that "others had influence or leverage over the official decisionmaker." *Gee*, 289 F.3d at 346. He does not point to anywhere in the record to show that the person conducting the final review of his termination served as the cat's paw of those with retaliatory motives. *Id.* Resultingly, Walker has not made out a *prima facie* case as to his termination because he did not show there was causation between his protected acts and his termination.

### B.  The County established legitimate, non-discriminatory reasons for Walker's CNET transfer and the dishonesty investigation but not for the performance evaluation.

The next step of analysis under *McDonnell Douglas Corp.* applies only to the actions for which Walker established a *prima facie*. The County argues that Walker's CNET transfer was due to his poor performance, a legitimate, non-discriminatory reason. ECF No. 146 at 18. The County identifies specific examples in the record to substantiate this assertion. These include evidence of Walker's "poor communication and poor job performance" and evidence that several unit members had noted concerns regarding Walker's performance and that Walker had regular meetings to strategize how he could address these concerns. *Id.* at 18-19. When Walker continued to struggle, the County terminated his employment. As to Walker's CNET transfer, the County met its burden to show there were legitimate, non-discriminatory reasons for his transfer.

The County likewise presented evidence of a legitimate reason for investigating Walker for dishonesty after the District Attorney received information that Walker had used his undercover credentials during two traffic stops. ECF No. 146 at 23-25. "Walker denied using his undercover credentials, while the detaining officer said that Walker did use them." *Id.* at 24. The County argues

that dishonesty is improper conduct under the County's disciplinary rules and because enforcing such rules is a legitimate reason for adverse employment actions, a legitimate, non-discriminatory reason existed for the investigation. *Id.* As to the dishonesty investigation, the County met its burden to show there were legitimate, non-discriminatory reasons for the investigation.

The County argues that summary judgment is appropriate as to the performance evaluation because Walker did not make out a *prima facie* case. ECF No. 146 at 19-21. However, the County does not argue that if Walker did make out a *prima facie* case, that the evaluation was based on a legitimate, non-discriminatory rationale. Therefore, the County has not met its burden under the second step of the *McDonnell Douglas Corp.* framework, and summary judgment is not appropriate on this point.

      **C.**    **Whether the County's transferring Walker from CNET to the Patrol Division and investigating him for dishonesty were pretextual present fact issues.**

The final step of the *McDonnell Douglas Corp.* burden shifting analysis only applies to Walker's CNET transfer and the dishonesty investigation because he established a *prima facie* case, and the County provided a legitimate, non-discriminatory reason for each.

Walker argues the County's basis for his CNET transfer is pretextual because prior to his protected activities the County had never disciplined him, he had received awards and positive performance evaluations for his work for his peers and supervisors, and the County treated him differently than other employees with similar performance issues. ECF No. 156 at 5. He argues that the County's basis for the dishonesty investigation was pretextual because the investigation occurred outside the 180-day window department policy requires for such an investigation.

For purposes of his Motion for Summary Judgment, Walker met his "burden of proving that 'but for' the discriminatory purpose" the adverse employed action would not have occurred" for both adverse actions. *Septimus*, 399 F.3d at 608. First, he showed a discriminatory motive

through evidence of disparate treatment, specifically that the County treated him differently from other similarly situated employees in transferring him from CNET to the Patrol Division. *Haire*, 719 F.3d at 363. The County contends that the other employee was not similarly situated because while the other employee had similar attitude and communication problems, he continued to perform while Walker did not. ECF No. 157 at 10. But the County does not sufficiently explain or dispute Walker's assertion that the County treated him differently despite similar issues of communication and attitude. The County does not show how Walker and the other employee received similar treatment for their similar issues. Walker has met his burden to show a genuine issue of material fact exists on this point.

Walker also shows that the County's explanation of the CNET transfer may be "unworthy of credence." *Haire*, 719 F.3d at 363. He explains how the County's explanation of its actions as "poor performance" is inconsistent with Walker's employment record for most of his tenure. ECF No. 156 at 5. And while it is plausible that Walker's performance issues arose suddenly as the County claims, Walker at least met his burden at this stage to raise a genuine dispute of material fact that the County's actions as to his CNET transfer were pretextual.

Walker also meets his summary judgment burden as to the dishonesty investigation. First, he showed that the traffic stops in which he allegedly used his undercover credentials occurred more than 180 days prior to the investigation, contrary to department policy regarding timing of investigations. ECF No 156 at 66. The County argues that the dishonesty it was investigating was Walker's denial of the use of the undercover credentials, which occurred two days prior to its investigation, not the alleged use of the credential. ECF No. 157 at 12. But a reasonable jury could find that the unauthorized use of the credentials rather than Walker's denial, "formed the basis" of the investigation, and therefore the dishonesty investigation began when the County interviewed

Walker about his use of the credentials on December 12, 2018, which was more than 180 days from the traffic stops. Walker at least met his burden at this stage to raise a genuine dispute of material fact that the County's actions as to the dishonesty investigation were pretextual. Therefore, summary judgment is not appropriate as to either of these claims.

### IV. CONCLUSION

Walker establishes a *prima facie* case only for his CNET transfer, performance evaluation, and the dishonesty investigation. Those three actions also survive the *McDonnell Douglas Corp.* burden shifting analysis. Walker does not establish a *prima facie* case for the remaining three actions he alleges for the first and second insubordination suspension and his termination from employment. Accordingly, the Court **GRANTS in part** the Motion for Summary Judgment (ECF No. 145) as to both of Walker's suspensions for insubordination and his termination, and **DENIES** the Motion as to his CNET transfer, performance evaluation, and dishonesty investigation.

It is so **ORDERED** on January 22, 2026.

                                                   Hal R. Ray, Jr.
                                                   UNITED STATES MAGISTRATE JUDGE